**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| ILIFE TECHNOLOGIES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:13-cv-04987 |
| | § | |
| NINTENDO OF AMERICA, INC., | § | |
| | § | |
| Defendant. | § | |

---

**MEMORANDUM OPINION AND ORDER**

Before the Court is Nintendo of America, Inc.'s Motion to Dismiss or Transfer for Improper Venue Under 28 U.S.C. § 1406(a) [ECF No. 206].  On June 23, 2017, the Court heard oral argument on the Motion.  As stated on the record at the hearing, the Motion is **DENIED**.  The Court now issues this Memorandum Opinion and Order describing its reasons for denying the Motion.

**1. Background**

iLife filed this patent infringement suit on December 23, 2013.  Nintendo filed its Answer on April 28, 2014.  In ¶ 7 of the Answer, Nintendo stated:

> Defendant admits that venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b). Defendant denies that the Northern District of Texas is a convenient venue for this dispute and reserves the right to transfer pursuant to 28 U.S.C. § 1404.

Answer ¶ 7.

On April 29, 2014, Nintendo filed a Motion to Transfer Venue pursuant to § 1404(a).  Nintendo broadly argued that the convenience factors under § 1404(a) supported a transfer to the Western District of Washington, where Nintendo's headquarters are located in Redmond, Washington.  In the alternative, Nintendo asked for the case to be transferred to the Northern

1

District of California.  Neither the motion nor the reply mentioned § 1406.  After oral argument on the § 1404 Motion, the Court denied Nintendo's Motion to Transfer.  The Court noted that Nintendo's headquarters were in Redmond, Washington, but that most of Nintendo's witnesses would be travelling from Japan, and the difference in distance between Washington and Texas for foreign witnesses was not significant for venue purposes.  Nintendo moved for reconsideration of the denial, which the Court denied.

On November 28, 2014, Nintendo moved to file its Amended Answer to assert an affirmative defense of inequitable conduct.  The Court granted Nintendo's motion; the Amended Answer contained the same paragraph on venue as Nintendo's first Answer:

> Defendant admits that venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b). Defendant denies that the Northern District of Texas is a convenient venue for this dispute and reserves the right to transfer pursuant to 28 U.S.C. § 1404.

Am. Answer [ECF No. 61] ¶ 7.

On May 22, 2017, the Supreme Court decided *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017), holding that for purposes of the patent venue statute, a corporation "resides" only in its state of incorporation.  Nintendo moves to dismiss or transfer this case to the Western District of Washington under § 1406(a), contending that in light of *TC Heartland*, venue is improper in the Northern District of Texas.  Jury selection and the pretrial conference for this case is scheduled for August 14, 2017.  Trial is scheduled to begin the week of August 21, 2017.

## 2.  Legal Background

Section 1400(b), the patent venue statute, provides that:

> Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

2

28 U.S.C. § 1400(b); *see also* Act of June 25, 1948, ch. 646, 62 Stat. 869, 936.

In *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 226 (1957), the Supreme Court considered the relationship between § 1400(b) and the general venue statute, § 1391. The Supreme Court had earlier considered a similar question in *Stonite Products. Co. v. Melvin Lloyd Co.*, 315 U.S. 561 (1942), specifically whether Section 48 of the Judicial Code, governing venue in patent litigation, was supplemented by Section 52, the general venue provision that predated Section 48.[1] In *Stonite*, the Court held that Section 52 did not alter the scope of Section 48, which was "the exclusive provision controlling venue in patent infringement proceedings," and enacted as "a restrictive measure, limiting a prior, broader venue." *Id.* at 566. "Congress did not intend the Act of 1897 to dovetail with the general provisions relating to the venue of civil suits, but rather that it alone should control venue in patent infringement proceedings." *Id.* at 565.

In 1948, the current version of the patent venue statute, § 1400(b), was enacted. Act of June 25, 1948. Ch. 646, 62 Stat. 869, 936. The general venue statute was amended in the same enactment, and consisted of one sentence which read:

> (c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

*Id.* at 935.

The Supreme Court in *Fourco* was again called upon to consider the interplay between the patent venue statute and the general venue statute. When discussing the significance of recent changes made to § 1391 and § 1400(b), the Supreme Court held that for purposes of § 1400(b), a corporation "resides" only in its State of incorporation:

---

[1]Section 52 was derived from R.S. § 740, which in turn stemmed from the Act of May 4, 1858, c. 27, 11 Stat. 272. Stonie, 315 U.S. at 566. Section 48 was enacted from the Act of March 3, 1897, c. 395, 29 Stat. 695. *Id.*

> Substitution of words "where the defendant resides" for "of which the defendant is inhabitant" in patent infringement venue statute, on ground that words "inhabitant" and "resident" were synonymous as respects venue, negatived intention to make corporations suable in patent infringement cases where they are merely "doing business," since the synonymous words mean "domicile" and in respect of corporations mean the state of incorporation only.

*Id.*

The Supreme Court in *Fourco* also discussed the interplay between § 1400(b) and

§ 1391, the general venue statute:

> We think it is clear that § 1391(c) is a general corporation venue statute, whereas [§] 1400(b) is a special venue statute applicable, specifically, to all defendants in a particular type of actions, i.e., patent infringement actions. In these circumstances the law is settled that "However inclusive may be the general language of a statute, it 'will not be held to apply to a matter specifically dealt with in another part of the *same enactment*. . . . '"
>
> . . .
>
> We hold that 28 U.S.C. § 1400(b) is the sole and exclusive provision controlling venue in patent infringement actions, and that it is not to be supplemented by the provisions of 28 U.S.C. § 1391(c).

*Id.* at 229 (emphasis added).

Since the decision in *Fourco*, Congress has not amended § 1400(b).  In 1988, however,

Congress amended § 1391(c) to read as follows:

> (c) *For purposes of venue under this chapter,* a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

Judicial Improvements and Access to Justice Act, Pub. L. No. 100–702, tit. X, § 1013(a), 102

Stat. 4642, 4669 (1988) (emphasis added).

In *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1578 (Fed. Cir.

1990), the Federal Circuit held that amendments to § 1391(c) regarding the applicability of

§ 1391(c)—namely, the 1988 revision that stated it applied "[f]or purposes of venue under this

chapter— "redefine[d] the meaning of the term 'resides' in" § 1400(b).  *Id.*  In making this

4

decision, the Federal Circuit considered the Supreme Court's decision in *Fourco*, and whether

Congress, in enacting the 1988 amendments, intended § 1400(b) to be interpreted differently:

> The Supreme Court's decision in *Fourco* is generally viewed as holding that § 1400(b) is the 'exclusive' venue statute in patent infringement actions. Thus it is sometimes said that, since *Fourco*, the only way to change the way that venue in patent infringement actions is determined is to change § 1400(b). This argument fails, however, because the Supreme Court, in *Brunette*, 406 U.S. 706, 92 S.Ct. 1936 [1972], refused to impose such a disablement upon the Congress' ability to enact or amend legislation. The issue in *Brunette* was whether § 1400(b) governed venue in a patent suit involving a foreign corporation, or whether the general venue provision applicable to aliens, 28 U.S.C. § 1391(d), governed. The Court held § 1391(d) applied, and that § 1400(b) was supplemented by the provision governing suits against aliens. *Fourco* and *Stonite* were distinguished.
>
> The specific question in *Fourco* was whether the statutory language previously enacted by the Congress as § 1391(c) supported a conclusion that Congress intended to have §§ 1391(c) and 1400(b) read together. On the basis of the nonspecific language of § 1391(c) and prior history as the Court read it, the Court concluded the answer was no.
>
> Section 1391(c) as it was in *Fourco* is no longer. We now have exact and classic language of incorporation: "For purposes of venue under this chapter . . . ." Congress could readily have added "except for section 1400(b)," if that exception, which we can presume was well known to the Congress, was intended to be maintained. Certainly it would not be sensible to require Congress to say, "For purposes of this chapter, *and we mean everything in this chapter* . . . ," in order to ensure that it has covered everything in a chapter of the statutes.
>
> The issue, then, is not whether the prior cases, including Supreme Court cases, determined that under different statutory language Congress' intent was that § 1400(b) stood alone. *The issue is, what, as a matter of first impression, should we conclude the Congress now intends by this new language in the venue act.*

*Id.* at 1579 (second emphasis added).

The Federal Circuit concluded that the plain meaning of the statute, coupled with the lack

of any evidence of Congress's intent to the contrary and the Supreme Court's holding in *Brunette*

*Mach. Works, Ltd. V. Kockum Indus., Inc.*, 406 U.S. 706, 714 (1972),[2] indicated that Congress

intended § 1400(b) and § 1391(c) to be read together.  Thus, since the Federal Circuit decided

---

[2] In *Brunette*, the Supreme Court expressly distinguished *Fourco* and *Stonite*, holding that § 1400(b) was supplemented by § 1391(d), the general venue provision applicable to aliens, in patent suits involving a foreign corporation.  406 U.S. at 714.

*VE Holding* in 1990, "the first test for venue under § 1400(b) with respect to a defendant that is a

corporation, in light of the 1988 amendment to § 1391(c), is whether the defendant was subject

to personal jurisdiction in the district of suit at the time the action was commenced."  *Id.* at 1584.

The general venue statute, § 1391, was again amended in 2011.  Section 1391 now

provides:

> (a) Applicability of section.—Except as otherwise provided by law—
>> (1) this section shall govern the venue of *all civil actions* brought in district
>> courts of the United States; and
> . . .
> (c) Residency.—*For all venue purposes*—
>> . . .
>> (2) an entity with the capacity to sue and be sued in its common name under
>> applicable law, whether or not incorporated, shall be deemed to reside, if a
>> defendant, in any judicial district in which such defendant is subject to the
>> court's personal jurisdiction with respect to the civil action in question and,
>> if a plaintiff, only in the judicial district in which it maintains its principal
>> place of business;

28 U.S.C. § 1391(a), (c)–(d) (emphasis added).

After these amendments, the Federal Circuit reaffirmed the validity of *VE Holding* in *In*

*re TC Heartland LLC*, 821 F.3d 1338 (Fed. Cir. 2016), *rev'd sub nom. TC Heartland LLC v.*

*Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017).

In *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017), the

Supreme Court reversed the Federal Circuit's decision in *VE Holding*:

> In *Fourco*, this Court definitively and unambiguously held that the word
> "reside[nce]" in § 1400(b) has a particular meaning as applied to domestic
> corporations: It refers only to the State of incorporation. Congress has not amended
> § 1400(b) since *Fourco*, and neither party asks us to reconsider our holding in that
> case.  Accordingly, the only question we must answer is whether Congress changed
> the meaning of § 1400(b) when it amended § 1391.  When Congress intends to
> effect a change of that kind, it ordinarily provides a relatively clear indication of its
> intent in the text of the amended provision.  The current version of § 1391 does not
> contain any indication that Congress intended to alter the meaning of § 1400(b) as
> interpreted in *Fourco*.

*Id.* at 1520 (citations omitted).

6

Thus, post-*TC Heartland*, venue is proper in the case of a corporate patent defendant, where (a) the corporation is incorporated, or (b) the defendant has committed acts of infringement and has a regular and established place of business.

### 3. Discussion

Nintendo argues that under *TC Heartland*, venue is improper in the Northern District of Texas because (a) Nintendo is incorporated in Washington, and (b) Nintendo lacks a regular and established place of business in the Northern District of Texas.  The Federal Circuit has held that the test to determine whether a defendant has a "regular and established business" is "whether the corporate defendant does its business in that district through a permanent and continuous presence there," and is not a question of whether it has a "fixed physical presence in the sense of a formal office or store."  *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985).  Nintendo argues that it does not operate an office in Texas, employ anyone in Texas, or maintain any offices in Texas.[3]  Nintendo also contends that iLife has not alleged any facts supporting that Nintendo has a "regular and established business" in Texas, and that it is the plaintiff's burden to do so.  *See Med. Designs, Inc. v. Orthopedic Tech., Inc.*, 684 F. Supp. 445, 446 (N.D. Tex. 1988) ("[T]he plaintiff bears the burden of proving both acts of infringement and a regular place of business in order to establish proper venue.").  Nintendo maintains that if this case were filed today, venue in the Northern District would be improper under *TC Heartland*.  Nintendo further argues that *TC Heartland* has retroactive effect on pending cases.

iLife argues that Nintendo affirmatively admitted that venue was proper in its Answer and Amended Answer, and by failing to make a "timely and sufficient" objection to venue, Nintendo waived its venue defense.  It did not file a Rule 12 motion in this case, and as stated

---

[3] For support, Nintendo cites to the declaration of Richard Medway, Nintendo's Vice President and Deputy General Counsel, which was provided as an exhibit to Nintendo's Earlier Motion to Transfer.  ECF No. 11-2 at APP.166.

above, in its Answer and Amended Answer, it "admit[ed] that venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b)." However, Nintendo maintains that it did not waive improper venue, because before the *TC Heartland* decision was issued, the defense of improper venue was not available, due to the Federal Circuit precedent of *VE Holding*. For support, Nintendo cites to various cases recognizing that a change in controlling law—or an "intervening change in law"—can permit parties to assert previously unraised grounds.

iLife makes two main arguments in response to Nintendo's contention that *TC Heartland* is new intervening law that permits Nintendo to raise a venue challenge at this late stage. First, iLife argues that the decision in *TC Heartland* did not qualify as a change in law. Second, iLife argues the Fifth Circuit does not recognize an intervening change of law doctrine so as to overcome Nintendo's venue waiver under Rule 12. For the reasons below, the Court concludes that *TC Heartland* does not qualify as an intervening change in law, and accordingly, does not reach whether the Fifth Circuit recognizes an exception to waiver in circumstances such as these.

iLife argues that "[t]he Supreme Court plainly stated that its decision in *TC Heartland* was not a change of law, and that its decision in *Fourco* interpreting § 1400(b) has been good law for the past 60 years." In making its argument that *TC Heartland* did not create "new law," iLife relies on the opinions of two Courts that have considered venue transfer post-*TC Heartland*: Senior Judge Harry Coke Morgan, Jr., in the Eastern District of Virginia in *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, No. 2:15-cv-21, 2017 WL 2556679 (E.D. Va. June 7, 2017), and Magistrate Judge Payne in the Eastern District of Texas in *Elbit Systems Land v. Hughes Network Systems, LLC*, No. 2:15-CV-00037, 2017 WL 2651618, at *18 (E.D. Tex. June 20, 2017). In *Cobalt Boats*, the defendant moved to transfer under *TC Heartland* and asserts virtually the same arguments Nintendo does here, namely that *TC Heartland* qualified as

intervening new law permitting it to reassert an otherwise waived venue challenge.  Judge Henry

Morgan disagreed, and held instead that *TC Heartland* did not create new law:

> Based on the Supreme Court's holding in TC Heartland, *Fourco* has continued to
> be binding law since it was decided in 1957, and thus, it has been available to every
> defendant since 1957. Accordingly, the Court FINDS that *TC Heartland* does not
> qualify for the intervening law exception to waiver because it merely affirms the
> viability of *Fourco*. Defendant Brunswick's assumption that *Fourco* was no longer
> good law was reasonable but wrong, and it cannot be excused from its waiver by
> saying there was a change in the law.

*Cobalt Boats*, 2017 WL 2556679, at *3.

Similarly, in *Elbit Systems*, Magistrate Judge Payne held that *TC Heartland* did not

qualify as an intervening change in law, noting that "[w]hile the Federal Circuit's decision in *VE

Holding* was inconsistent with *Fourco*, the Federal Circuit cannot overturn Supreme Court

precedent."  2017 WL 2651618, at *20.

During oral argument on the Motion to Transfer, Nintendo's counsel argued that in *VE

Holding*, the Federal Circuit did not overrule the Supreme Court's *Fourco* decision, but instead

held that Congress had amended the general venue statute in such a way that abrogated the effect

of *Fourco*.  Nintendo argues that *VE Holding* addressed a different question than *Fourco* and

*Stonite*—namely, whether Congress intended the 1988 amendments to § 1391(c) to supplement §

1400(b)—and thus, until the Supreme Court in *TC Heartland* reaffirmed the validity of *Fourco*,

the Federal Circuit's decision in *VE Holding* was the definitive authority on the relationship

between § 1400(b) and § 1391(c), as amended in 1988 and 2011.  *See In re TC Heartland*, 821

F.3d at 1342 ("In *VE Holding*, we found that the Supreme Court's decision in *Fourco* with

regard to the appropriate definition of corporate residence for patent cases in the absence of an

applicable statute to be no longer the law because in the 1988 amendments Congress had made

the definition of corporate residence applicable to patent cases.").  Nintendo's argument thus

appears to be that following the decision in *VE Holding* in 1990 up until the Supreme Court

decided *TC Heartland* in May of 2017, the highest authority available had deemed *Fourco*
overridden by congressional action, and accordingly the Supreme Court's reaffirming of *Fourco*
constituted a change of law.

      "In the domain of statutory interpretation, Congress is the master," and "obviously has the
power to correct [the Supreme Court's] mistakes." *W. Va. Uni. Hosp., Inc. v. Casey*, 499 U.S. 83,
113 (1991) (Stevens, J., dissenting), *superseded by statute*, Civil Rights Act of 1991, Pub. L. No.
102-166 § 113, 105 Stat. 1072, *as recognized in Landgraf v. USI Film Prods.*, 511 U.S. 244, 251
(1994).   However, absent clear legislative history, identifying when Congress acts to undo
Supreme Court action is far from simple.[4]   Similarly, the effect of congressional action in
abrogating Supreme Court precedent is unclear, especially when the intent of Congress is not
divulged.

      It is clear that the Supreme Court has the final authority on statutory interpretation and
the continuing validity of its decisions.  In the context of overrides, the Supreme Court has
expressly acknowledged when it deems congressional enactments to have overridden an earlier
decision.  *See, e.g.*, *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 557 (2005) ("In
*Finley* we emphasized that '[w]hatever we say regarding the scope of jurisdiction conferred by a
particular statute can of course be changed by Congress.' In 1990, Congress accepted the
invitation. It passed the Judicial Improvements Act, which enacted § 1367, the provision which

---

[4] Numerous academics have devoted substantial efforts to identifying congressional overrides, with varying
methodologies and criteria for what qualifies as an override.  *See, e.g.*, Matthew R. Christiansen & William N.
Eskridge, Jr., *Congressional Overrides of Supreme Court Statutory Interpretation Decisions, 1967–2011*, 92 Tex. L.
Rev. 1317, 1325 (2014); William N. Eskridge, Jr., *Overriding Supreme Court Statutory Interpretation Decisions*,
101 Yale L.J. 331, 332 n.1 (1991) ("This Article will use the term "override" to mean any time Congress reacts
consciously to, and modifies a statutory interpretation decision. . . .  With only a few exceptions, this Article will not
use the term "override" to include statutes for which the legislative history—mainly committee reports and
hearings—does not reveal a legislative focus on judicial decisions."); *see also* James Buatti & Richard L. Hasen*,
Conscious Congressional Overriding of the Supreme Court, Gridlock, and Partisan Politics*, 93 Tex. L. Rev. See
Also 263, 264 (2015) (discussing the significance of considering both conscious and inadvertent congressional
overrides).

controls these cases." (citations omitted)); *Landgraf*, 511 U.S. at 251 ("Other sections of the

[Civil Rights Act of 1991] were obviously drafted with 'recent decisions of the Supreme Court'

in mind.").   What is unclear, however, is the extent to which a lower court, such as the Federal

Circuit, has the authority to deem a Supreme Court decision overridden by an act of Congress.   It

is particularly unclear when the congressional act in question, such as the one reviewed by the

Federal Circuit in *VE Holding*, contains no reference to the Supreme Court decision allegedly

being overridden, or even the statute at issue.   *See VE Holding*, 917 F.2d at 1580–81 ("While the

legislative history reveals that a purpose of the amendment is to define venue of corporate

defendants and to prescribe the venue determination in multidistrict states, it does not speak to

how or whether this amendment is intended to affect § 1400(b), or for that matter other sections

of chapter 87.").

        The Court concludes, therefore, except where congressional abrogation of a Supreme

Court decision is express, "only [the Supreme] Court may overrule one of its precedents"—

whether through its own opinion or recognition of congressional override—and until that occurs,

*Fourco* is and still was the law.   *See Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460

U.S. 533, 533 (1983) (per curiam).   In *VE Holding*, the Federal Circuit clearly thought that

Congress had implicitly overridden *Fourco* by statutory amendment.   However, until the

Supreme Court considered the question, *Fourco* remained the law.   The intervening twenty-

seven years may have created reliance on *VE Holding* by litigants, including Nintendo, but that

"does not change the harsh reality" that a party could have "ultimately succeeded in convincing

the Supreme Court to reaffirm *Fourco*, just as the petitioner in *TC Heartland* did."   *Elbit

Systems*, 2017 WL 2651618, at *20.

11

For the foregoing reasons, the Court concludes that *TC Heartland* does not qualify as an intervening change in law.  Accordingly, the Court does not reach the issue of whether Nintendo may raise a previously waived challenge to improper venue on the basis of *TC Heartland*. Nintendo's Motion to Transfer is **DENIED.**

**SO ORDERED.**

June 27, 2017.


BARBARA M. G. LYNN
CHIEF JUDGE