**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| ILIFE TECHNOLOGIES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:13-cv-4987-M |
| | § | |
| NINTENDO OF AMERICA, INC., | § | |
| | § | |
| Defendant. | § | |

**ORDER**

Before the Court are the Motion for Judgment as a Matter of Law and Motion for New Trial (ECF No. 356), filed by Defendant Nintendo of America, Inc., and the Motion for Entry of Judgment (ECF No. 349), filed by Plaintiff iLife Technologies, Inc. For the reasons stated below, the Court grants Defendant's Motion for Judgment as a Matter of Law, conditionally denies its alternative Motion for a New Trial, and denies Plaintiff's Motion for Entry of Judgment.

## I. Background

Plaintiff sued Defendant for infringing U.S. Patent No. 6,864,796. Plaintiff argued that Defendant's Wii and Wii U devices, when used with certain video games, infringed claim 1 of the '796 patent.

The '796 patent generally discloses a system for evaluating body movement relative to an environment. The system includes a sensor that detects dynamic and static accelerative phenomena of the body.[1] '796 patent at 2:53–55. The sensor "senses one or more absolute values, changes in value, or some combination of the same" and "generates an output signal to

[1] The specification distinguishes between "static acceleration, or gravity," which is "a gauge of position," versus "dynamic acceleration (i.e., vibration, body movement, and the like)." '796 patent at 1:65–2:1.

[a] processor." *Id.* at 2:64–3:5, 5:46–52. The processor then evaluates the signal to determine whether the body is in an acceptable or unacceptable state. *Id.* at 9:48–51. The patent describes acceptable or unacceptable as within or beyond "tolerance." *Id.* Claim 1 provides:

> A system within a communications device capable of evaluating movement of a body relative to an environment, said system comprising:
>
> a sensor, associable with said body, that senses dynamic and static accelerative phenomena of said body, and
>
> a processor, associated with said sensor, that processes said sensed dynamic and static accelerative phenomena as a function of at least one accelerative event characteristic to thereby determine whether said evaluated body movement is within environmental tolerance
>
> wherein said processor generates tolerance indicia in response to said determination; and
>
> wherein said communication device transmits said tolerance indicia.

*Id.* at 13:47–61.

The case was tried to a jury. The jury returned a verdict, finding that Defendant infringed claim 1 with respect to the accused products. (ECF No. 342 at 25). The jury awarded Plaintiff $10,100,000 in damages, as a lump sum reasonable royalty. (*Id.* at 29). The jury also found that the patent was not invalid due to the alleged lack of (1) an adequate written description or (2) enablement. (*Id.* at 26–27). Defendant moved for judgment as a matter of law. (ECF No. 356). In the alternative, Defendant moved for a new trial. (*Id.*).

## II. Motion for Judgment as a Matter of Law

Defendant moves for judgment as a matter of law, arguing that claim 1 is invalid for three reasons: (1) claim 1 is directed to patent-ineligible subject matter under 35 U.S.C. § 101, (2) claim 1 is indefinite under 35 U.S.C. § 112(b), and (3) claim 1 is invalid under 35 U.S.C.

§ 112(a) for lack of written description and enablement.[2] (ECF No. 357 at 7–33). Defendant also argues that the accused products do not infringe claim 1. (*Id.* at 33–40). Because the Court finds that claim 1 is invalid under 35 U.S.C. § 101, it will not expressly address Defendant's other invalidity or infringement arguments.

Section 101 of the Patent Act states: "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101.

The Supreme Court has established a two-step framework to determine patent eligibility under § 101. *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 84 (2012). First, a court must determine whether the character of the relevant claims is directed to a patent-ineligible concept, such as laws of nature, natural phenomena, or abstract ideas. *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. 208, 217–18 (2014). If the character of the claims is directed to a patent-ineligible concept, the court must then consider the elements of each claim both individually and "as an ordered combination" to determine whether the elements "transform the nature of the claim" into a patent-eligible matter. *Id*. at 217 (citing *Mayo*, 566 U.S. at 72–73). To save a patent at the second step, an inventive concept must be evident in the claims. *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016).

**A. Step One**

Claim 1 recites a system comprising conventional computer components performing various operations. '796 patent at 13:48–61. A sensor collects data, i.e., "senses dynamic and

---

[2] In its Motion for Summary Judgment, Defendant contended that claim 1 is invalid under 35 U.S.C. § 101 and indefinite under 35 U.S.C. § 112(b). (ECF No. 224). The Court carried these issues, and because they are matters of law, they were not presented to the jury. (ECF No. 302).

static accelerative phenomena." *Id.* at 13:51–52. A processor analyzes that data, i.e., "processes said sensed dynamic and static accelerative phenomena as a function of at least one accelerative event characteristic to thereby determine whether said evaluated body movement is within environmental tolerance." *Id.* at 13:51–57. After analysis, the processor outputs variables, i.e., "tolerance indicia." *Id.* at 13:58–69. A communication device then transmits the tolerance indicia. *Id.* at 13:60–61. At its core, claim 1 is therefore directed to the abstract idea of "gathering, processing, and transmitting . . . information." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016); *see also SAP Am., Inc. v. InvestPic*, LLC, 898 F.3d 1161, 1167 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 2747 (2019); *Smartflash LLC v. Apple Inc.*, 680 F. App'x 977, 983 (Fed. Cir. 2017), *cert. denied*, 138 S. Ct. 687 (2018) ("[M]erely storing, transmitting, retrieving, and writing data to implement an abstract idea on a computer does not transform the nature of the claim into a patent-eligible application.").

Claim 1 is not any less abstract because the information is of a specific type—dynamic and static accelerative phenomena. *See Elec. Power*, 830 F.3d at 1353 ("[W]e have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas."). Analyzing the information through some mathematical algorithm and generating wholly new information is also "essentially [a] mental process[] within the abstract-idea category." *Id.* at 1354; *see also Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014) ("A process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible . . . even if the [output] is for a specific purpose."). Merely then transmitting "the results of abstract processes of collecting and analyzing information, without more . . . is abstract as an ancillary part of such collection and

analysis." *Elec. Power*, 830 F.3d at 1354.

Furthermore, an abstract idea implemented on conventional computer components is still an abstract idea. *See Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016); *Shortridge v. Found. Constr. Payroll Serv., LLC*, 655 F. App'x 848, 853 (Fed. Cir. 2016) (holding ineligible a patent that implements an abstract idea through "computer components . . . conventional and known to the industry at the time of the patent"). Nothing in claim 1, understood in light of the specification, requires anything other than conventional sensors and processors performing "conventional activit[ies] previously known to the industry." *Alice*, 573 U.S. at 225 (quoting *Mayo*, 573 U.S. at 72); *see also* '796 patent at 2:1–4 (disclosing that sensors "measur[ing] both static and dynamic accelerative phenomena are known" in the industry).[3]

A claim disclosing some improvement to the functionality of conventional computer components, however, may be patent-eligible under step one. For example, in *Thales Visionix Inc. v. United States*, the asserted claims recited a system for tracking the motion of an object relative to a moving platform, comprised of (1) inertial sensors mounted on the object and the platform and (2) an unnamed element to receive the sensors' signals and determine the orientation of the object. 850 F.3d 1343, 1345–46 (Fed. Cir. 2017). The system used conventional sensors. *Id.* However, the Federal Circuit found the claims patent-eligible because they specified an "unconventional configuration of sensors," which reduced errors in tracking motion. *Id.* at 1349; *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336–37 (Fed. Cir. 2016) (holding that a claim disclosing a method for improving computer search and retrieval

---

[3] Evidence introduced at trial supports this finding. (*See* Aug. 21, 2017, Trial Tr. at 118:23–119:2 (inventor of '796 patent testifying that processors were known at the time of invention and that Plaintiff purchased them from other companies); *id.* at 116:16–21 (inventor testifying the same for sensors that collected acceleration data); Aug. 22, 2017, Trial Tr. at 105:9–11 (Plaintiff's expert testifying that processors were well-known at the time of invention)).

using self-referential tables, which was a "specific improvement to the way computers operate," was not directed to an abstract idea); *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1261–62) (Fed. Cir. 2017) (acknowledging that the claimed "programmable operational characteristics" enabled a memory system to be operable with multiple different processors and could outperform prior art memory systems); *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1304 (Fed. Cir. 2019) (determining that claims were not abstract because they "actually prevent the normal, expected operation of a conventional computer network").

But claim 1 is not directed to an improvement in the functionality of sensors and processors. For example, the claim does not disclose any improvement in the sensor's ability to collect information, such as collecting previously unknown information or collecting information more accurately. It does not disclose some improvement in the processor itself, such as faster or more powerful processing. Unlike in *Thales*, claim 1 is not limited to any particular configuration of the components that results in a technological improvement. Instead, the sensor and processor are merely tools to execute an abstract idea; claim 1 does not recite "any particular assertedly inventive technology" for collecting, analyzing, and transmitting information. *Elec. Power*, 830 F.3d at 1354.

Indeed, claim 1 is analogous to and materially indistinguishable from other claims that have failed at step one because they were directed to collecting, gathering, and transmitting information. *See TDE Petroleum Data Sols., Inc., v. AKM Enter., Inc.*, 657 F. App'x 991, 992 (Fed. Cir. 2016), *cert. denied*, 137 S. Ct. 1230 (2017) (finding claims disclosing processes for (1) receiving data from sensors deployed on an oil well drill, (2) validating the data, (3) determining, based on the data, the present state of the oil well drill, "e.g., drilling, sliding, or bore hole conditioning" to be patent ineligible); *Elec. Power*, 830 F.3d at 1354 (concluding that

claims disclosing processes for detecting events on an interconnected electric power grid by collecting information from various sources, analyzing this information to detect events in real time, and displaying the event analysis results and diagnoses were ineligible); *SAP Am., Inc.*, 898 F.3d at 1167 (concluding that claims focused on "selecting certain information, analyzing it using mathematical techniques, and reporting or displaying the results of the analysis" were ineligible); *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1017 (Fed. Cir. 2017), *cert. denied*, 138 S. Ct. 689 (2018) (determining that claims disclosing "abstract process that includes: (1) receiving identity data from a device with a request for access to resources; (2) confirming the authenticity of the identity data associated with that device; (3) determining whether the device identified is authorized to access the resources requested; and (4) if authorized, permitting access to the requested resources" were ineligible); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1339, 1346 (Fed. Cir. 2013) (finding claims that recite "applying . . . information related to the insurance transaction to rules to determine a task to be completed" to be patent ineligible).

**B. Step Two**

Having determined that claim 1 is directed to an abstract idea, the Court proceeds to step two of the *Alice* framework. There is no inventive concept in the claim elements, whether considered individually or as an ordered combination. Claim 1, as construed, does not add any meaningful limitations to the routine steps of data collection, analysis, and transmission using conventional computer components.

Plaintiff "cannot argue that . . . receiving sensor data, validating sensor data, or determining a state based on sensor data is individually inventive." *TDE Petroleum*, 657 F. App'x at 993. These are the "most ordinary of steps in data analysis and are recited in the

ordinary order," so there is nothing inventive about the ordered combination of these steps. *Id.*; *see also Elec. Power*, 830 F.3d at 1354 ("The advance [the claims] purport to make is a process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions."). Claim 1 requires neither a new source or type of information nor a new method of measuring information. It provides for an unspecified set of rules for analyzing sensor data, but discloses no further details on those rules, like how data might be evaluated for a child versus an adult.[4] *Compare Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 910 (Fed. Cir. 2017), *cert. denied*, 138 S. Ct. 2000 (2018) ("The claims generically provide for the encoding of various data . . . but do not set out how this is to be performed . . . [and] [n]o special rules . . . are recited.") *with McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1315 (Fed. Cir. 2016) (finding a claim patent eligible where the "claimed process uses a combined order of specific rules that renders information into a specific format that is then used and applied to create desired results"). In fact, Plaintiff argued during claim construction that claim 1 "does not contain words requiring any special type of processing." (ECF No. 113 at 5). Claim 1 discloses outputting variables called tolerance indicia, but "the mere fact that the inventor applied coined labels . . . does not make the underlying concept inventive." *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017). Overall, claim 1 encompasses a sensor that senses data, a processor that processes data, and a communications device that communicates data, and no further inventive concept is recited to transform the abstract idea into a patent-eligible invention.

[4] Claim 1 provides for a processor that analyzes "sensed dynamic and static accelerative phenomena as a function of at least one accelerative event characteristic." '796 patent at 13:53–56. As construed, this limitation simply means that the processor applies some mathematical function to acceleration data collected from the sensor. That is not a meaningful limitation to supply an inventive concept.

Plaintiff highlights features discussed in the specification, such as how the claimed processor distinguishes "between normal and abnormal accelerative events, and, when an abnormal event is identified, to indicate whether the abnormal event is tolerable, or within tolerance." '796 patent at 3:7–11. The specification further discusses how the processor may be programmed to distinguish "other physical characteristics, including temperature, pressure, force, sound, light, relative position, and the like." *Id.* at 3:11–14. But an inventive concept must be apparent in the claim language. Where "[t]he claim language does not provide any specific showing of what is inventive about the [limitation in question] or about the technology used to generate and process it," the claim does not satisfy step two. *Secured Mail*, 873 F.3d at 912; *see also Intellectual Ventures*, 838 F.3d at 1322 ("The district court erred in relying on technological details set forth in the patent's specification and not set forth in the claims to find an inventive concept."). Even if, for example, the preferred embodiment discloses what could arguably be an inventive concept, claim 1 recites none of those details or limitations.

In sum, claim 1 is invalid under 35 U.S.C. § 101. It is directed to an abstract idea and fails to recite any inventive concept sufficient to transform the abstract idea into a patent-eligible invention.

## III. Alternative Motion for a New Trial

Under Rule 50(c)(1), the Court must conditionally rule on Defendant's Motion for a New Trial:

> If the court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed. The court must state the grounds for conditionally granting or denying the motion for a new trial.

Fed. R. Civ. P. 50(c)(1). If the court conditionally grants a new trial and the appellate court finds that the grant of judgment was in error, "the new trial must proceed unless the appellate court

orders otherwise." Fed. R. Civ. P. 50(c)(2). If the court conditionally denies a new trial and the appellate court reverses judgment, "the case must proceed as the appellate court orders." *Id*.

Under Rule 59(a), a court can grant a new jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A court can grant a new trial if it concludes that the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course. *Smith v. Transworld Drilling Co*., 773 F.2d 610, 613 (5th Cir. 1985) (citations omitted).

Defendant argues that a new trial is necessary for the following reasons: (1) the jury's verdict is against the weight of the evidence, because no reasonable jury could have concluded claim 1 was valid and infringed; (2) the Court erred in construing certain claims; (3) the jury was improperly presented with resolving claim construction disputes; and (4) the Court provided several erroneous instructions to the jury. (ECF No. 357 at 40–44).

The Court conditionally denies Defendant's Motion for a New Trial. If the Court's grant of judgment as a matter of law is reversed on appeal, and the Federal Circuit holds that Plaintiff is entitled to recover the damages awarded by the jury, the Court cannot say that the verdict was against the weight of the evidence. Further, the Court finds that it did not err in construing claims, did not improperly task the jury with resolving claim construction disputes, and did not provide the jury with incorrect instructions.

**IV. Attorneys' Fees**

Under 35 U.S.C. § 285, "the court in exceptional cases may award reasonable attorney fees to the prevailing party." To the extent Defendant is considering moving for such fees, Defendant is advised that the Court is extremely unlikely to find that this case is exceptional for the purposes of § 285.

## V. Conclusion

For the reasons stated above, the Court grants Defendant's Motion for Judgment as a Matter of Law, conditionally denies Defendant's alternative Motion for New Trial, and denies Plaintiff's Motion for Entry of Judgment. The Court will enter judgment in favor of Defendant.

**SO ORDERED**.

January 17, 2020.

BARBARA M. G. LYNN
CHIEF JUDGE